UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Larry M. Davis,

    Plaintiff,

v.                                                     Civil No. 09-2563 (JNE/FLN)
                                                          ORDER

Grinnell Mutual Reinsurance Company,

    Defendant.

---

Brendan R. Tupa, Esq., Entrepreneurs & Free Markets, PLC, appeared for Plaintiff Larry M. Davis.

Katherine A. McBride, Esq., Meagher & Geer, PLLP, appeared for Defendant Grinnell Mutual Reinsurance Company.

---

Larry M. Davis submitted an insurance claim based on hail damage to his insurer, Grinnell Mutual Reinsurance Company (Grinnell). After Grinnell allegedly failed to properly pay the claim, Davis brought this action against it for breach of contract, unjust enrichment, and unreasonable denial of benefits. This case is before the Court on Grinnell's motion for partial summary judgment. Grinnell seeks summary judgment on count three of the amended complaint, which is the unreasonable denial of benefits claim based on Minnesota's relatively new insurance standard of conduct, *see* Minn. Stat. § 604.18 (2010). The Court heard the motion on December 16, 2010. For the reasons set forth below, the Court grants Grinnell's motion.

### I.    BACKGROUND

The original complaint in this case, filed on September 22, 2009, did not include the section 604.18 claim, as required by the statute's procedural strictures.[1] On March 15, 2010,

---

[1] The Court expresses no opinion as to whether these procedures must be followed in federal court.

Davis moved to amend the complaint to add a claim under section 604.18. He supported the motion with a sworn declaration alleging facts that formed the basis of the section 604.18 claim. The magistrate judge granted the motion on April 22, 2010. Grinnell appealed this decision to the Honorable James M. Rosenbaum, United States District Judge. Judge Rosenbaum affirmed the magistrate judge's order on June 10, 2010. Now, Grinnell moves for summary judgment on the section 604.18 claim.

The insured property is Davis's home in Worthington, Minnesota.[2] Multiple buildings are located on the property, four of which have cedar shake roofs, and one of which has a deck. On May 6, 2009, a hailstorm damaged the buildings' roofs, siding, decking, windows, and doors, as well as some of Davis's personal property. The parties do not dispute that Grinnell is responsible for insuring the damage from the hailstorm pursuant to their insurance contract. Instead, the parties' dispute centers on whether Davis is entitled to full replacement of the cedar shake roofs.

On May 10, 2009, Grinnell sent adjuster Dean Nielsen to assess the damage to Davis's property. Nielsen testified that he is not experienced with wooden roofs and that he did not expect to make the final decision on the roofs. Davis, on the other hand, testified that Nielsen told him that Nielsen had adjusted wooden roofs on barns. In any event, Nielsen observed white spots on the roofs that he photographed and identified as hail damage. When Nielsen inspected the deck, he told Davis that the deck could be power washed and stained to repair the hail damage. Davis told Nielsen that this approach was unacceptable and that he expected the deck to be replaced. Davis also testified that Nielsen told him that the roofs were "totaled," that Nielsen led him to believe that Grinnell would replace the roofs, and that Nielsen advised Davis

---

[2] Facts are uncontested unless otherwise indicated.

2

to obtain an estimate for roof replacement and painting all of the buildings. Davis admitted that he knew that Nielsen did not have final decision making authority. According to Davis, Nielsen called him after the inspection to tell him that another adjuster would review the claim because of its large size. In contrast, Nielsen testified that that he told his manager that someone with more knowledge of cedar roofs should adjust the claim.

On May 18, 2009, Grinnell sent another adjuster, Kevin Hieber, and Nielsen to Davis's property for another inspection. Davis testified that he asked Hieber "what are you seeing at this point?" and that Hieber responded "all four roofs, paint, . . . power wash the deck and stain it." (Davis Dep. 110) Hieber testified that he never told Davis that the roofs would be replaced. (Hieber Dep. 27) The parties agree that Davis told Hieber that power washing the deck was unacceptable. But Davis also asserts that when he stated that power washing the deck was insufficient, Hieber responded by saying that disputing the deck would jeopardize the entire claim. (Davis Decl. ¶ 10) Davis testified that Hieber first indicated that Grinnell would not replace the roofs with a written estimate received by Davis after the inspection. Davis responded, through phone conversations and emails, that this was unacceptable.

As a result of the continuing disagreement, Grinnell hired an independent inspector, Richard Herzog, to conduct another evaluation of the damage. Herzog inspected the deck, the roofs, and the buildings' exteriors. His evaluation of the roofs included counting the number of damaged shingles in representative ten-foot by ten-foot squares. He concluded that the roofs should be repaired rather than replaced because the hail damaged less than 1% of the shingles.

In June 2009, Davis hired his own inspector, Ronald Hetland, to evaluate the hail damage. The original agreement between Hetland and Davis included a contingency fee that entitled Hetland to receive 10% of any amount recovered by Davis in this lawsuit in excess of

3

$13,000. Hetland concluded that the roofs needed to be replaced based on marring he observed from the ground. According to Hetland, the cost to make the necessary repairs and replacements is approximately $205,000 as opposed to the $16,636.69 offered by Grinnell.

## II. DISCUSSION

As a preliminary matter, Davis asserts that Grinnell's motion for summary judgment on the unreasonable denial of benefits claim is premature. Davis argues that the Court may not rule on his section 604.18 claim at the summary judgment stage because the statute states: "An award of taxable costs under this section shall be determined by the court in a proceeding subsequent to any determination by a fact finder . . . ." Minn. Stat. § 604.18, subd. 4(b). Assuming, without deciding, that this provision applies in federal court, the language cited by Davis restricts when a court may award taxable costs under the statute—it does not control when a court may dismiss or otherwise dispose of the claim. Accordingly, it does not restrict when a defendant may bring a summary judgment motion. Davis also cites District of Minnesota Local Rule 54.3 in support of his proposition, but that rule applies to "the party seeking an award of fees." D. Minn. LR 54.3(b). Grinnell is not "seeking an award of fees"; thus, Local Rule 54.3 is inapposite. Davis cites no authority, and the Court is aware of none, that stands for the proposition that the Court cannot decide a defendant's Rule 56 motion simply because the claim may entitle the plaintiff to attorney fees.

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To support an assertion that a fact cannot be or is genuinely disputed, a party must cite "to particular parts of materials in the record," show "that the materials cited do not establish the absence or presence of a genuine dispute," or show "that an adverse party cannot produce

4

admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "[T]he determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case." *Id.* Here, the statute and Minnesota case law are silent on the substantive standard of proof for section 604.18 claims. Given that Minnesota presumes the preponderance of the evidence standard where the statute is silent, *State by Humphrey v. Alpine Air Prods., Inc.*, 500 N.W.2d 788, 790 (Minn. 1993), and given the parties' silence on the matter, the Court assumes without deciding that the substantive standard of proof is a preponderance of the evidence.

Under Minnesota Statutes section 604.18, a court may award certain damages and reasonable attorney fees up to a maximum amount if the insured can show:

> (1) the absence of a reasonable basis for denying the benefits of the insurance policy; and
>
> (2) that the insurer knew of the lack of a reasonable basis for denying the benefits of the insurance policy or acted in reckless disregard of the lack of a reasonable basis for denying the benefits of the insurance policy.

Minn. Stat. § 604.18, subd. 2. The Minnesota Legislature added section 604.18 in 2008, reversing a line of Minnesota cases which had consistently refused to recognize bad faith denial claims. *See Saint Paul Fire & Marine Ins. Co. v. A.P.I., Inc.*, 738 N.W.2d 401, 407 (Minn. Ct. App. 2007). At the hearing, Davis argued that the gap (approximately $200,000) between Grinnell's tendered coverage and what Davis asserts he should be paid is enough to allow his section 604.18 claim to proceed. But the plain meaning of the statute (like the common law bad

5

faith denial actions upon which this statute was modeled, *see Anderson v. Cont'l Ins.*, 271 N.W.2d 368 (Wis. 1978)) requires more. Namely, the statute requires the lack of a reasonable basis for denying benefits that is known or that is attended by a reckless disregard for the lack of a reasonableness basis. Accepting Davis's invitation to hold that the difference between offered coverage and disputed coverage risks creating a general attorney fees provision for insurance claims. This is not what the statute says or does, and the Court rejects Davis's argument.

The strongest support for Davis's unreasonable denial of benefits claim comes from the statements allegedly made by Hieber. In support of his motion to amend his complaint to add the statutory bad faith claim, Davis submitted an affidavit alleging "[t]hat when your Affiant expressed disagreement with the proposed remedy for your Affiant's deck to Mr. Hieber . . . Mr. Hieber indicated that such a dispute could jeopardize your Affiant's entire claim." (Davis Decl. ¶ 10) A reasonable fact finder, however, could not conclude from the record that Hieber warned of retaliation. The only evidence of Hieber's retaliation warning is Davis's sworn declaration which was made in support of the motion to amend his complaint. A sworn statement in a declaration or affidavit may be considered when deciding a summary judgment motion. But, here, Davis's deposition testimony, given after the declaration was made, contradicts the declaration. During his deposition, Davis described the May 18 conversation with Hieber when Hieber allegedly told Davis that "all four roofs" would be replaced but the deck would be washed and stained. Although Davis testified that he protested to Hieber about the deck, Davis did not testify that Hieber warned of retaliation. Further, Davis was immediately asked if Hieber said anything else—Davis indicated that he did not. (Davis Dep. 110-11) Accordingly, Davis contradicted his declaration by testifying that Hieber did not warn of retaliation. The Court therefore concludes that a reasonable fact finder could not find that Hieber warned of retaliation.

*See Stearns v. McGuire*, 154 F. App'x 70, 76 (10th Cir. 2005) (holding that defendant could not create an issue of fact by relying on an earlier interrogatory response while ignoring later contradictory deposition testimony); *Darnell v. Target Stores*, 16 F.3d 174, 176-77 (7th Cir. 1994) ("[Plaintiff] cannot 'create issues of fact' by relying on the affidavits of [witnesses], which [the witnesses] contradicted in their own [subsequent] depositions.").

Viewing the record in the light most favorable to Davis, a reasonable fact finder could conclude the following. Grinnell's first adjuster told Davis that the roofs were totaled and needed to be replaced. After the first inspection, the first adjuster told Davis that Grinnell required a second assessment. Grinnell then sent Hieber, whom Grinnell chose because of his competency with cedar roofs. Hieber indicated to Davis that Grinnell would replace all of the roofs. Later, Hieber sent an estimate to Davis indicating that the roofs would be repaired rather than replaced. After a third inspection, Herzog found that the roofs should be repaired rather than replaced. This evidence does not allow the conclusion that an offer to repair the roofs lacked a reasonable basis. And while Hetland, the adjuster hired by Davis, indicated that replacement was necessary, this merely establishes an issue of fact as to whether replacement or repair was required under the insurance contract. Davis has not pointed to anything in the record suggesting that Grinnell's refusal to replace the roofs lacked a reasonable basis. The Court concludes that a reasonable fact finder could not find that Grinnell violated section 604.18 and that count three of the amended complaint must be dismissed.

### III. CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Grinnell's motion for partial summary judgment [Docket No. 26] is GRANTED.

2. Count 3 of the amended complaint is DISMISSED.

Dated: December 30, 2010

s/ Joan N. Ericksen  
JOAN N. ERICKSEN  
United States District Judge